**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>TIMOTHY CHARLES NARGASSANS,<br><br>                    Debtor<br><br>TIMOTHY CHARLES NARGASSANS,<br><br>                    Plaintiff<br><br>v.<br><br>SUNTRUST BANKS, INC., a/k/a<br>  SUNTRUST EDUCATIONAL LOANS,<br>AMERICAN STUDENT ASSISTANCE,<br>and<br>EDUCATIONAL CREDIT<br>  MANAGEMENT CORPORATION,<br><br>                    Defendants | Chapter 7<br>Case No. 10-12766-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 10-1170<br><br><br>**NOT FOR PUBLICATION** |

**MEMORANDUM OF DECISION**

This matter came before the Court for trial on the complaint of chapter 7 debtor Timothy C. Nargassans (the "Debtor") for a declaration under 11 U.S.C. § 523(a)(8) that his debt to Educational Credit Management Corporation ("ECMC"), which debt arises from a series of Stafford Student Loans that were consolidated into a loan now held by ECMC, is dischargeable. ECMC opposes the complaint. For the reasons set forth below, judgment shall enter for ECMC.

**PROCEDURAL BACKGROUND**

The Debtor and his wife filed a joint petition for relief under chapter 7 of the Bankruptcy Code on March 17, 2010. In the case thereby commenced, the Debtor filed the complaint commencing this adversary proceeding. He has appeared pro se throughout this adversary proceeding.

He initially filed the adversary proceeding against Sun Trust Banks, Inc., a/k/a SunTrust Educational Loans, and American Student Assistance (collectively the "Sun Trust Entities"). The Sun Trust Entities were the entities into which the consolidation had earlier been accomplished, but after this adversary proceeding was commenced, those same loans were assigned to ECMC. ECMC was not initially named as a defendant in the action, but it moved to intervene and to be substituted for the other named defendants under Fed. R. Civ. P. 25(c), made applicable by Fed. R. Bankr. P. 7025. It appearing to the Court that the debt in question has in fact been assigned to ECMC, the Court allowed ECMC to intervene as a party defendant but, to afford the Debtor full relief if in fact the Sun Trust Entities remained holders of the debt, denied substitution of ECMC for the other defendants. Consequently, the Sun Trust Entities remain defendants, but neither has appeared, and both have been defaulted. The matter went to trial against ECMC alone.

Notwithstanding the order permitting intervention, when the Debtor filed his pretrial statement, he sought to challenge ECMC's standing to appear, and the Court overruled that challenge. He also sought to add claims for an alleged violation of the Fair Debt Collection Practices Act, as well as unspecified claims relating to the origination and servicing of his student loans. The Court allowed ECMC's motion in limine to exclude these additional claims from the trial and limited the trial to the claim that the loans should be discharged under § 523(a)(8) of the Bankruptcy Code. The trial proceeded on that basis.

**FACTS ESTABLISHED AT TRIAL**

The Debtor presented himself as the sole witness at the trial. He also offered twenty-two exhibits that were admitted, many over the objection of ECMC. The Debtor offered certain medical records that were excluded from the trial by virtue of sustained objections, but after the Debtor offered unredacted versions of those records, they were admitted. For its case, ECMC examined the Debtor and offered four exhibits. ECMC also filed a request that the Court take judicial notice of the William D. Ford

2

Federal Direct Repayment Loan Program (the "Ford Program"), including the Income Contingent Repayment Plan and the Income-Based Repayment Plan that are available as part of the Ford Program, and of the Federal 2009 HHS Poverty Guidelines (collectively, the "Federal Repayment Programs"). I allowed the request for judicial notice. See 44 U.S.C. section 1507 ("The contents of the Federal Register shall be judicially noticed.")

The Debtor testified at length at the trial. He is married and has a child who at the time of trial was three and a half years old. His wife works full time for a clothing store chain that requires her to travel around the northeast United States with some frequency. The child is in day care, and the Debtor has a significant role in her care, including drop off and pick up responsibilities. The child has had health challenges, but fortunately those seem to have been resolved or become manageable by the time of the trial; they were not identified as a real barrier to the Debtor's ability to earn a living.

The Debtor attended Endicott College from 1996 to 2000, and his studies centered on business administration. His precise course of study was in the entrepreneurial program at Endicott with a focus on marketing. His plan after college was to start his own business, and he set out on that course right away. The nature of that business is unclear, but whatever it was it failed. Since the failure of that business, the Debtor's employment history has been marked by wide swings in income and includes extended periods of unemployment. Working in reverse chronological order from the time of trial, the Debtor is currently employed in a business founded and operated by close family members. The business seems to be focused on telephone marketing, and the Debtor works there full time. He has the title of Product Marketing Specialist. The company, Saylent Technologies, Inc. ("Saylent"), is located in Franklin, Massachusetts. It appears that the Debtor has worked at Saylent since approximately mid-2011. At the time of the trial he was earning $48,000 per year and certain employee benefits. It also appears that the Debtor's wife earned, at the time of filing, $38,000 per year in her job designing window presentations at a regional men's clothing retailer. In addition, the wife's employer offers

3

several benefits to the family, including health, dental, and vision insurance, as well as long term disability and life insurance benefits for the wife.   There was no evidence that her income had declined at the time a trial.  Prior to working at Saylent, the Debtor had been unemployed for an extended period during which he collected unemployment benefits of approximately $2,500 per month.  Prior to that time, the Debtor worked a variety of jobs:  as a laborer for at least two construction companies, as a conference program manager, and as a store manager at a Brookstone retail store.  Most years he earned $35,000 or less in those jobs.  The Debtor offered little specific testimony about his income in the years since his graduation from college, but he did testify that in 2008, he and his wife had adjusted gross income of $77,571.  Even assuming that the wife's income was flat from the time of filing to the time of the trial, the Debtor's family gross income was $86,000 ($48,000 for the Debtor and $38,000 for the wife), which is $7,166.66 per month.

      The Debtor seems to contest the amount due on his student loans, but the determination of that issue is not before me.  The amount of the debt bears on this proceeding only insofar as it affects the Debtor's ability to repay.  The Debtor offered and the Court allowed the admission of an exhibit (Debtor's Exhibit 15A) from the National Student Loans Data System that showed a student loan balance of $54,951 from all sources of student loans.  Although the parties were unable to agree on a joint pretrial memorandum, ECMC represented in its own pretrial memorandum that the parties have stipulated that as of July 2012, the amount due on the Debtor's student loans was $59,655.92, consisting of $54,950.68 in principal and $4,705.24 in interest.  It is unclear whether these numbers have in fact been agreed-to by the Debtor, but they at least represent ECMC's position, and therefore I conclude that the amount of the debt is no more than the amount to which ECMC has stipulated.  Accordingly, for purposes of this adversary proceeding only, I find that the amount of the debt is at least $54,951 and no more than $59,655.92.  The loan as consolidated has a fixed interest rate of 5.4% and

accumulates interest at the rate of $6.77 per day.  Also of interest is that the Debtor states in his pretrial memorandum that his student loans have never been in default, at least since their consolidation.

The Debtor testified that, since college, he has suffered from a broad array of health challenges. Of paramount concern according to his testimony is that, since late 2009 and through the date of trial, he has suffered from anxiety disorders and depression.  To treat these conditions, he has had several medications and antidepressants or analgesics prescribed, including Lorazepam, Vicodin, and Citralopram.  At the time of trial, he was still taking the first of these two medications.  With his doctor's assistance and guidance, he had discontinued Citralopram because of difficult side effects, including migraine headaches.

The Debtor also introduced an extensive medical report from his doctor that listed a roster of other medical problems.  He has had chronic foot pain, knee pain, wrist pain, arthralgia, and sciatica, and he suffers from obesity.  "Just weeks before trial, and as a result of the problems listed in this paragraph, the doctor ordered weight loss counseling, exercise, dietary restrictions, and other counseling.  The doctor continued the antidepressants and ordered the use of ibuprofen and Tylenol as needed.  Notably, the doctor did not direct that the Debtor limit his work schedule in any way.  In addition, in his medical examination just before trial, as reported in his medical report, the Debtor denied that he had sleep problems, depression, confusion, difficulty concentrating, memory loss, and other mental health issues.  He admitted only to mood swings.  At the end of that examination, the doctor ordered that the patient return in 12 months for another examination.

There was also evidence of the Debtor's expenses at the trial.  According to his Schedule J, the schedule of expenses he filed in his bankruptcy case, his family has expenses of $5,490.91 per month. The Debtor testified that since the bankruptcy filing, he and his wife have reduced certain expenses, including their automobile expenses, and they have renegotiated the lease with their landlord.  In

addition, at his new job at Saylent, the Debtor receives a dependent-care benefit that presumably reduces the net cost of day care for the child.

**POSITIONS OF THE PARTIES**

From the foregoing facts I understand the Debtor to be advancing two bases for a finding that it would be an undue hardship for him to repay the student loans. First, he argues that he has too little income at present to repay the loans and poor prospects for increasing that income in the foreseeable future. He attributes this to the overall market for people with his skills and education and to the pressures on his life and circumstances, including his wife's job, the child-care obligations that fall to him, and a very burdensome commute from Salem, Massachusetts to Franklin, Massachusetts each day. Second, the Debtor identifies the medical history detailed above as evidence that he is physically unable to earn enough to repay the loans and that he will not likely recover from these disabilities in the foreseeable future. Therefore, he contends, his earning capacity is capped and insufficient to pay the loans without undue hardship.

For its part, ECMC argues that the debtor has simply failed to carry his burden of establishing undue hardship under the applicable legal standards that I have in the past said that I will follow in these cases. In addition, ECMC argues that the Debtor cannot establish undue hardship where he is likely eligible for an income dependent repayment plan offered by the government.

**ANALYSIS**

In the case of *Sanborn v. Educational Credit Management Corporation*, 431 B.R. 5 (D. Mass. 2010), I identified the test that I apply to the determination of whether a debtor has met his or her burden of establishing "undue hardship" under 11 U.S.C. § 523(a)(8):

> A bankruptcy discharge does not include student loan debt "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The burden of proof lies with the debtor on the issue of

6

undue hardship. *Nash v. Connecticut Student Loan Foundation (In re Nash),* 446 F.3d 188, 190–91 (1st Cir. 2006). "Proof of undue hardship is generally found only in 'truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents.'" *ECMC v. Bronsdon (In re Bronsdon),* 421 B.R. 27, 32 (D. Mass. 2009), citing *T.I. Fed. Credit Union v. DelBonis,* 72 F.3d 921, 927 (1st Cir. 1995).

"Undue hardship" is not defined in the Bankruptcy Code. The courts have applied one of two approaches to applying it: either the totality of the circumstances approach or the *Brunner* test. See *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987). The only significant difference between these is that under *Brunner,* the debtor must establish that she made a good faith effort to repay the educational loans at issue. When applying the totality of the circumstances test, the debtor's efforts to repay may be considered, but evidence of those efforts (or lack thereof) is not necessarily dispositive. *Educational Credit Management Corp. v. Kelly,* 312 B.R. 200, 206–07 (1st Cir. BAP 2004).

The Bankruptcy Appellate Panel for the First Circuit articulated the totality of the circumstances test as follows:

> The "totality of the circumstances" analysis requires a debtor to prove by a preponderance of evidence that (1) his *9 past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other relevant facts or circumstances unique to the case, prevent him from paying the student loans in question while still maintaining a minimal standard of living, even when aided by a discharge of other pre-petition debts.

*Lorenz v. Am. Educ. Servs.*, 337 B.R. 423, 430 (1st Cir. BAP 2006). Under either test, the initial focus is on the debtor's current and future ability to repay the student loans. But the totality of the circumstances test allows the Court to consider the facts and circumstances unique to each case and to measure the impact of those facts and circumstances on the debtor's ability to pay now and in the future. While this inquiry would include the debtor's efforts to repay the loan, I am not persuaded that those efforts should rise to the level of a determinative factor. I am satisfied that the "totality of the circumstances" test frames the inquiry most appropriately.

*Sanborn*, 431 B.R. at 8-9.  I reach the same conclusion here as I did in *Sanborn*:  the Debtor has not met

his burden of establishing that it would be an undue hardship for him to repay his student loan.

To establish undue hardship under § 523(a)(8), the Debtor relies primarily on his series of illnesses and chronic health challenges.  The only evidence that was presented in support of this theory was the Debtor's own testimony and certain medical records that were admitted over the defendant's objection.  As a matter of proof, it would be the rare case in which a Debtor's claim of medical disability as a basis for such a discharge could be met without the testimony of a medical professional.  In order for a health challenge or chronic disability to meet the required standard of the totality of the circumstances test for discharge of a student loan, the Court would need to find that the disabling condition will continue into the future with such severity as to make the debtor's ability to repay the loan an undue hardship for the remainder of his working life.  There would likely need to be evidence concerning the unavailability of therapies and treatments that would allow the debtor to recover sufficiently to perform some job and to earn income to repay the loan.  No such testimony was adduced in this case.  The Debtor merely recounted his history of illnesses and health challenges and offered medical records corroborating that history and identifying past and present treatments.  There was no evidence concerning the likely impact of these conditions on the Debtor's ability to earn income in the future.  In fact, the evidence supports the opposite conclusion.  The Debtor's work history has been marked by job loss and unemployment, but in recent years the Debtor has demonstrated an ability to increase his earnings, all during times when he was suffering from the health challenges and disabilities upon which he relies as a basis for his undue hardship case.  The Debtor plainly has issues with anxiety and depression, as well as joint pain.  But even with these problems, the Debtor succeeded in increasing his income by the time of the trial, which was two years from the time of the filing of his bankruptcy petition.  The only evidence that I have is that the treatments and therapies that he has received are working well enough to make his work life tolerable and productive.  Indeed, the doctor treating the Debtor plainly believes the treatments and therapies are working:  the doctor was not scheduled to see the Debtor again for a full year, and the doctor has not indicated that these conditions impair the

Debtors ability to work. Based on the foregoing I do not find that the Debtor has established that his medical challenges and disabilities make repayment of his student loans an undue hardship.

The Debtor's other basis for seeking discharge of his student loans is a rather non-specific argument that he has not been able to find continuous and reliable work. This, he suggests, is attributable to the market for his services, to a series of unfortunate job placements, and ultimately to an extended period of unemployment. This history does not come close to establishing that he will not be able to repay his student loans without undue hardship. The Debtor's difficult work history in the years leading to his bankruptcy filing in 2010 is not at all unfamiliar or unique. His job loss and difficulty in locating a new job are unremarkable, given the period of time at issue. By the time of the trial, the Debtor had succeeded in locating a well-paying, full-time job with considerable employee benefits. His family income and benefit package had risen to a level at which the Debtor should be able to survive without exposing himself and his family to undue hardship by virtue of repaying his student loans. Therefore, the Debtor's second basis for suggesting that his student loan should be discharged is equally unavailing.

ECMC argues that the Debtor should not prevail for another reason: he has not explained how it is an undue hardship for him to repay the loan in light of the income-based repayment programs available to him, namely the Ford Program, including the Income Contingent Repayment Plan and the Income-Based Repayment Plan that are available as part of the Ford Program. Under these programs, when a student loan obligor has limited income, the obligation to repay is adjusted to an affordable level, so that the obligor need pay only as income permits. ECMC also introduced correspondence with the Debtor in which these programs were made available to him. Moreover, the Debtor stated in his supplemental pretrial memorandum that the Ford Program "is an option" in the event that his student loan is not discharged. He has not yet applied for these benefits, having elected to seek first a discharge under § 523(a)(8). Under these federal repayment programs, a debtor's obligation to repay a loan

would be adjusted according to ability to pay in any given period. In a letter dated April 2011 (Defendant's Exhibit 2), ECMC informed the Debtor of his apparent eligibility for an income-based repayment plan under the terms of which his payments would be based on the applicable poverty guidelines in Massachusetts for a family of three. The letter provided the example of a family of three with income of $35,000, in which case the payments would be $90.06 per month. In fact, if the Debtor chose to file his tax return separately and had income of about $28,000, he would be required to make no payment whatsoever. If at the end of the twenty-five year term of the program any balance remained owing, the balance would be administratively discharged. Given the availability of these programs, it appears that nondischarge of the loan debt likely would not impose on the Debtor a payment obligation that is greater than his ability to pay during periods of continuing disability or recurring unemployment.

**CONCLUSION**

Upon application of the totality of the circumstances test, I find that the Debtor has failed to demonstrate by a preponderance of the evidence that excepting his consolidated student loans from discharge would impose upon him an undue hardship. Judgment will enter dismissing his complaint.[1]

Date: July 11, 2013

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[1] The Sun Trust Entities remain defendants only because it was unclear to the Debtor that his obligations had in fact been transferred from the Sun Trust Entities to ECMC. But even if there has been no transfer, the debt at issue with respect to the Sun Trust Entities is the same as the debt whose repayment was the subject of the trial with ECMC. Regardless of who is the holder of the debt in question, the Debtor has not carried his burden under § 523(a)(8), and therefore, notwithstanding the failure of the Sun Trust Entities to appear and defend, the same judgment will enter as to all three defendants.